UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARY BETH CLAWSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00212 |
| | § | |
| GMAC MORTGAGE, LLC F/K/A | § | |
| GMAC MORTGAGE CORPORATION, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This case arises out of the attempted foreclosure on Plaintiffs Mary Beth Clawson and John Riddle's home in Bacliff, Texas. Plaintiffs request a declaratory judgment stating that Defendants' attempted foreclosure on the property is barred by the applicable statute of limitations, the doctrine of res judicata, and Defendants' failure to provide adequate notice of the foreclosure sale. Defendants now seek summary judgment.[1] Having reviewed the parties' briefs, the exhibits, and the applicable law, the Court **GRANTS** Defendants' motion.

## I. BACKGROUND

On July 29, 2004, Clawson took out a $625,250.00 mortgage loan, which

---

[1] Defendants also filed a motion for judgment on the pleadings, advancing the same arguments contained in its summary judgment motion. Docket Entry No. 14. Because documents outside the pleadings are relevant to the Court's ruling, an evaluation under Rule 56 is more appropriate than one under Rule 12(c). The motion on the pleadings is therefore **DENIED** as moot.

was secured by a deed of trust on her property located in Bacliff. *See* Docket Entry No. 18-1 at 7–20. Though the original beneficiary under the deed of trust was Republic State Mortgage Company, the promissory note and deed were eventually assigned to Defendant GMAC Mortgage, LLC, who has been the loan servicer since 2004. *See id.* at 4, 35–36.

Problems concerning the loan arose in 2008. On May 2, 2008, GMAC sent Clawson a notice of default, informing her that she was delinquent in the amount of $13,261.35 and had thirty days to cure the default. *Id.* at 40. GMAC sent Clawson another letter on June 13, 2008, notifying her that a representative would go to the property within the week to "rekey and winterize" the property, because it had been found to be vacant. Docket Entry No. 1-4 at 29. With the default still uncured, GMAC sent Clawson a notice of acceleration on October 28, 2008, declaring that all unpaid principal and accrued interest on the promissory note, in the amount of $662,954.77, was due and payable. Docket Entry No. 18-1 at 43–44.

On January 16, 2009, GMAC recorded a notice rescinding the acceleration, thereby restoring the note and deed of trust to "their original terms and conditions, as though no acceleration took place." *Id.* at 47. Whether GMAC rescinded the acceleration at the request of Clawson is unclear: the notice of rescission states that Clawson requested an opportunity to fully cure the defaults giving rise to the

acceleration, but Clawson filed a declaration in this action stating that she never made such a request. *Compare id.* at 46, *with* Docket Entry No. 16-4 at 2.

Shortly after the rescission, on January 30, 2009, Plaintiffs filed a lawsuit against GMAC and several other defendants in state court in Galveston County. That suit arose from GMAC's June 2008 determination that the home was vacant and involved allegations that the rekeying process resulted in substantial property damage. *See* Docket Entry No. 18-1 at 62–76.  The court granted GMAC's motion for summary judgment and dismissed the claims with prejudice on August 1, 2011. *Id.* at 78.

On August 25, 2011, GMAC sent Clawson another notice of default, notifying her that she owed $299,394.41 on the note and demanding that she cure the default within thirty days.  *Id.* at 50–51.  On May 30, 2012, with the default still uncured, GMAC sent Clawson a new notice of acceleration and a notice of substitute trustee's sale, which named Defendant Executive Trustee Services, LLC (a subsidiary of GMAC) as the substitute trustee and set the foreclosure sale for July 3, 2012.  *Id.* at 54–60.  The acceleration notice provided a total amount due of $1,004,480.58.  *Id.* at 59.

On July 2, 2012—the day before the scheduled foreclosure sale—Plaintiffs filed this lawsuit in the 122nd Judicial District of Galveston County, Texas. Docket Entry No. 1-4 at 6.  Defendants then removed the case to this Court.

Plaintiffs seek declaratory and injunctive relief related to the foreclosure, as well as monetary relief based on a usury claim; however, due to Defendants' pending Chapter 11 bankruptcy, Plaintiffs' claim for monetary damages is subject to an automatic stay and is thus not presently before the Court. *Id.* at 8–11; Docket Entry No. 10.

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.   ANALYSIS

Plaintiffs' petition states three independent reasons for barring the attempted foreclosure of their property: (1) the four-year statute of limitations had run before the date of the foreclosure sale; (2) Defendants abandoned their right to foreclose under the doctrine of res judicata because they failed to assert that right as a counterclaim in the 2009 lawsuit; and (3) Defendants failed to provide adequate

notice of the foreclosure sale.  The Court addresses these three issues in turn.

## A.  Statute of Limitations

Section 16.035 of the Texas Civil Practice & Remedies Code establishes a four-year limitations period for real property actions.  Whereas section 16.035(a) addresses judicial foreclosures,[2] section 16.035(b) addresses nonjudicial foreclosures, such as the one at issue in this case:

> (b)  A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b).  Upon the expiration of the limitations period, the real property lien and the power of sale to enforce the lien become void.  *Id.* § 16.035(d).

Whether Defendants' attempted foreclosure sale was made within the four-year limitations period depends on when the cause of action accrued.  For the reasons that follow, the Court agrees with Defendants that the action accrued when they accelerated the loan in May 2012 and thus finds that the foreclosure action was timely.

Section 16.035(e) provides some guidance regarding the accrual date, stating that, for notes payable in installments and secured by a real property lien, "the

---

[2] Plaintiffs incorrectly rely on section 16.035(a) in their original petition, but now appear to recognize that section 16.035(b) is the relevant provision for nonjudicial foreclosures.  *Compare* Docket Entry 1-4 at 9 (Plaintiffs' original petition), *with* Docket Entry No. 19 at 4 (Plaintiffs' summary judgment response).  Rather than require Plaintiffs to replead, the Court will evaluate Plaintiffs' claim as if made pursuant to section 16.035(b).

four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment. *Id.* § 16.035(e). Moreover, under long-established Texas law, "[i]f a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (citing *Hammann v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (Tex. 1933); *Curtis v. Speck*, 130 S.W.2d 348, 351 (Tex. App.—Galveston 1939, writ ref'd)).

While the parties agree with the general rule than an action accrues when a party actually exercises its option to accelerate, they disagree on two related issues: (1) whether GMAC actually exercised its option to accelerate in 2008 in light of the rescission; and (2) whether the rescission reset the limitations period.

The Court agrees with Plaintiffs that GMAC actually exercised its option to accelerate when it sent the notice of acceleration in October 2008. In *Holy Cross*, the Texas Supreme Court noted that effective acceleration in the context of accrual requires two acts—notice of intent to accelerate and notice of acceleration. *Id.* The court also explicitly overturned the line of cases that held that acceleration is not exercised unless a notice of acceleration is followed by affirmative actions toward foreclosure. *Id.* at 570. The court stated:

> We disapprove of *Swoboda* and this line of cases to the extent they can be read to require affirmative action towards foreclosure to trigger acceleration of a note secured by real property when the parties' agreement does not require such action. To hold, . . . that acceleration does not occur and thus an action does not accrue until a foreclosure posting or sale takes place would, in essence, mean the foreclosure posting or sale would be the triggering event bringing about the right to hold a foreclosure sale. This result is nonsensical.

*Id.* Given that GMAC declared its intent to accelerate on the loan and sent Clawson a notice of acceleration in 2008, the Court finds that GMAC exercised its option to accelerate at that time.

Nonetheless, the Court agrees with Defendants that GMAC abandoned its attempted acceleration, and accordingly reset the statute of limitations, when it recorded the notice of rescission in January 2009. "Even when a note holder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Id.* at 566–67 (citations omitted); *see also Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("It has been the law of Texas at least since 1901 that the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions." (citing *San Antonio Real–Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901))); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. App.—Tyler 1974, no writ) (noting defendant's "right to withdraw or revoke its option to accelerate payment"). When a party abandons acceleration, the contract

is effectively restored to its original condition, including the note's original maturity date. *Khan*, 371 S.W.3d at 353 (citations omitted). This is consistent with the language of GMAC's notice of rescission, which declared the note and deed of trust to be "in effect in accordance with their original terms and conditions." Docket Entry No. 18-1 at 47.[3]

Plaintiffs respond by arguing that GMAC did not have the authority to unilaterally abandon acceleration, because abandonment requires joint action of the parties. They rely on *San Antonio Real Estate Building & Loan Association v. Stewart*, 61 S.W. 386 (Tex. 1901), for the proposition that "[i]t is not in the power of the creditor by his acts alone to change the rights of the parties resulting from the maturity of the debt," or, in other words, that "neither party by his separate action or nonaction [may] impair the rights of the other." *Id.* at 388–89. But *Stewart* was premised on the situation in which the failure to pay an installment *ipso facto* gives rise to the cause of action upon the whole debt; the opinion explicitly distinguishes situations, like the present, "in which the contract is

---

[3] Plaintiffs appear to argue that the rescission was invalid because the note had not been assigned to GMAC in 2009 and thus GMAC was a "stranger to the transaction." Docket Entry No. 16-1 at 2. But GMAC was undisputedly the loan servicer since 2004 and Plaintiffs recognized GMAC's interest in the loan by suing it in January 2009. *See Puig v. Citibank, N.A.*, No. 12-10609, 2013 WL 657676, at *2 (5th Cir. Feb. 22, 2013) (rejecting argument that defendant lacked standing to enforce deed of trust when plaintiff continuously acted as if defendant was the holder of the note and only the defendant had sought to enforce the deed of trust); *Bell v. Bank of Am. Home Loan Serv. LP*, No. 4:11-cv-02085, 2012 WL 568755, at *4 (S.D. Tex. Feb. 21, 2012) (explaining that mortgage-servicer defendant had standing to foreclose on the note under Texas Property Code section 51.0025 (citations omitted)).

regarded as only giving to the creditor the right of election." *Id.* at 388. More recent cases make clear that *Stewart* does not preclude a note holder from abandoning acceleration without express agreement from the borrower. *See Holy Cross*, 44 S.W.3d at 566–67 (noting holder's ability to abandon acceleration by continuing to accept payments without exacting available remedies); *Santibanez v. Saxon Mortg. Inc.*, No. 11-10-00227-CV, 2012 WL 3639814 (Tex. App.— Eastland Aug. 23, 2012, no pet.) ("The parties can abandon acceleration and restore the contract to its original terms by agreement *or* actions." (emphasis in original) (citation omitted)); *Khan*, 371 S.W.3d at 356 ("[I]f an agreement abandoning acceleration had to be in writing, then the parties would not be able to do it by their actions alone, as *San Antonio Real–Estate* holds."); *Denbina*, 516 S.W.2d at 463 (finding that a note holder abandoned acceleration when it took a non-suit on a counterclaim).

In sum, GMAC restored the note and deed of trust to their original terms when it abandoned acceleration by filing the notice of rescission. Therefore, its cause of action for the present default did not accrue until it exercised its option of acceleration in May 2012. The foreclosure sale date of July 3, 2012 was well within the four-year statute of limitations.[4]

---

[4] Plaintiffs make two references in their response to Defendants' motion on the pleadings that they are entitled to partial summary judgment on the statute of limitations issue. *See* Docket Entry Nos. 16 at 4; 16-2 at 3. If Plaintiffs are, in fact, moving for partial summary judgment, that

### B.  Res Judicata

Plaintiffs also argue that the Court should bar foreclosure because Defendant's claims under the note and deed of trust were compulsory counterclaims in the 2009 lawsuit, and are thus now barred by res judicata. Though it appears that Plaintiffs are no longer pursuing this argument,[5] the Court nevertheless notes that the argument fails as a matter of law because (1) GMAC had the right to refrain from pursuing a counterclaim and instead pursue a nonjudicial foreclosure; and (2) GMAC's attempted foreclosure was not a compulsory counterclaim.

First, "[u]nder Texas law, when a borrower files an action challenging the validity of a secured debt, the state's compulsory counterclaim rule, Tex. R. Civ. P. 97(a), does not require the secured party to counterclaim to collect on the debt if the creditor has a contractual right to pursue a nonjudicial forclosure." *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992) (citing *Kaspar v. Keller*, 466 S.W.2d 326, 329 (Tex. App.—Waco 1971, writ ref'd n.r.e.); *Thurman v. FDIC*, 889 F.2d 1441, 1444–45 (5th Cir. 1989); *In re Phillips*, 124 B.R. 712, 717–18 & n. 11 (Bankr. W.D. Tex. 1991)).  The rule is designed to prevent a borrower from depriving its lender of a choice of remedies.  *Id.*  As explained in

---

motion is denied for the reasons above.

[5] In both their response to Defendants' motion for judgment on the pleadings and in their response to Defendants' motion for summary judgment, Plaintiffs failed to respond to Defendants' arguments regarding this claim or even to advance the claim broadly.  *See* Docket Entry Nos. 16, 18.

*Kaspar*:

> [T]he mortgagor should not be permitted to destroy or impair the mortgagee's contractual right to foreclosure under the power of sale by the simple expedient of instituting a suit, whether groundless or meritorious, thereby compelling the mortgagee to abandon the extra-judicial foreclosure which he had the right to elect, nullifying his election, and permitting the mortgagor to control the option as to remedies.

*Kaspar*, 466 S.W.2d at 329.  Accordingly, Plaintiffs' decision to pursue the 2009 lawsuit did not deprive Defendants of their ability to pursue a nonjudicial foreclosure.[6]

Second, the attempted foreclosure was not a compulsory counterclaim because it did not "arise[] out of the transaction or occurrence that [was] the subject matter of the opposing party's claim."  Tex. R. Civ. P. 97(a).  The subject matter of the 2009 lawsuit was GMAC's determination that the property was vacant and its directive to rekey the property, which allegedly resulted in, among other things, "slashed paintings and electronic equipment"; "an opossum [] feeding out of the kitchen pantry"; and "rats' nests (full of baby rats) in almost every part of the house."  Docket Entry No. 18-1 at 63–64.  The suit did not arise out of

---

[6] The general rule that state court actions removed to federal court are governed by the federal, rather than state, procedural rules does not apply if application of the federal rule violates either the Constitution or Rules Enabling Act. *Douglas*, 979 F.2d at 1129–30 (citing *Hanna v. Plumer*, 380 U.S. 460, 470–73 (1965); *Weems v. McCloud*, 619 F.2d 1081, 1097–98 n. 38 (5th Cir. 1980)).  The Rules Enabling Act states that the federal rules "shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072.  Thus, the federal counterclaim rule, Federal Rule of Civil Procedure 13(a), is inapplicable in this case because it would abridge Defendants' substantive rights and enlarge Plaintiffs' substantive rights. *Douglas*, 979 F.2d at 1130.

Plaintiffs' failure to cure the default on the note, nor could it have given that GMAC had already rescinded the acceleration (and had not yet reaccelerated) when Plaintiffs filed suit on January 30, 2009.

Accordingly, GMAC did not forfeit its ability to foreclose when it chose not to file a counterclaim in the 2009 lawsuit.

### C.  Defective Notice

Finally, Plaintiffs seek to avoid foreclosure on the ground that GMAC failed to provide adequate notice as required by the deed of trust and Chapter 52 of the Property Code.  Once again, it is unclear if Plaintiffs are still pursuing this claim, as they failed to mention it or respond to Defendants' arguments regarding it in their briefing.  In any event, the 2012 notice of substitute trustee's sale and 2012 notice of acceleration show that Plaintiffs received adequate notice of the foreclosure sale and acceleration of the note.  *See* Docket Entry No. 18-1 at 54–60.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket Entry No. 18) is **GRANTED**.  Plaintiffs' claims are **DISMISSED**, except for the usury claim, which is subject to the automatic stay in Defendants' pending bankruptcy.  The case is **ADMINISTRATIVELY CLOSED** until the parties notify the Court that the bankruptcy stay is lifted, at which time the Court will reinstate the case on its active docket.

**SIGNED** this 9th day of May, 2013.

_____
Gregg Costa
United States District Judge